FILED
NOV 13 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Robert Rowen, *pro se*
321 South Main Street #537
Sebastapol, California 95472
Phone: (707) 328-3012

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

Robert Rowen and Teresa Su,

          Petitioners,

v.

Douglas H. Shulman, Commissioner of Internal Revenue; Kristen Hoffmeister, Appeals Officer; Ed Sabrak, Revenue Officer; Rosalind C. Kochmanski, Field Director, Accounts Management; Ann Hagemeyer, Operations Mgr. ASFR/ Centralized Reconsideration; Ursula Dean, Operations Manager; and Teresa Amper, Settlement Officer,

          Respondents.

Case No. CV 12 5831 KAW

## ROBERT ROWEN'S AND TERESA SU'S PETITION FOR A WRIT OF MANDAMUS

COMES NOW Petitioners Robert Rowen and Teresa Su, (hereinafter Mr. Rowen and Ms. Su) by leave of court pro se, and submits Mr. Rowen's and Ms. Su's Petition for Writ of Mandamus pursuant to 28 U.S.C. § 1361.

### JURISDICTION

District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

Mandamus relief is available to compel an official of the United States to perform a duty owed to an individual only if (1) the individual's claim is clear and certain; (2) the official's duty is "ministerial and so plainly prescribed as to be free from doubt"; and (3) no other adequate remedy is available.[1] Whether each element of the mandamus test is satisfied is a question of law. Id

## INTRODUCTION

It is undisputed that the internal revenue code imposes mandatory duties on the Respondents in this case to timely perform specific designated functions, according to their specific assignments. These specific duties were, and are, owed to the Petitioners. Respondents have failed or refused to timely perform specific duties owed to the Petitioners. Respondents' actions in this case have caused intentional destruction of Petitioners' records, repeated unnecessary delays, and intentional errors that caused irreparable injury to the Petitioners, and prevented Petitioners' timely compliance with the filing requirements of the Petitioners' annual income tax forms.

## RESPONDENTS' DUTIES OWED TO PETITIONERS ARE MINISTERIAL

Respondent officials duties owed to the Petitioners were, and are "ministerial and so plainly prescribed as to be free from doubt". The Taxpayer Bill of Rights 2 modified 26 U.S.C. Sec. 6404(e)(1)(A) to add the word "unreasonable" before the words "error or delay" and to change "ministerial act" to "ministerial or managerial act." Sec. 301(a), 110 Stat. 1457. These changes, however, only apply to interest accruing on deficiencies for tax years beginning after July 30, 1996, see Sec. 301(c), *ibid.*

<u>Managerial act</u>. The term "managerial act" means an administrative act that occurs during the processing of a case involving the temporary or permanent loss of

---

[1] *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986)

records or the exercise of judgment or discretion relating to management of personnel. <u>A decision regarding the proper application of federal tax law is not a managerial act</u>. A decision made by a supervisor to, for instance, send a revenue agent to a training course and not reassign that agent's cases, resulting in a delay of some sort, would be a managerial act.[2] (Emphasis added)

<u>Ministerial act</u>. The term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a case after all prerequisites of the act, such as conferences and review by supervisors, have taken place. <u>A decision regarding the proper application of federal tax law is not a ministerial act</u>.[3] (Emphasis added)

<u>PETITIONERS' CLAIM IS CLEAR AND CERTAIN</u>

Petitioners' claim to the duties owed to the Petitioners by Respondents is clear and certain, because "ministerial acts" committed by Respondents were procedural or mechanical acts that did not involve the exercise of judgment or discretion and that occurred during the processing of Petitioners' case after all prerequisites of the act, such as conferences and review by supervisors, had taken place. Shredding Petitioners' annual income tax forms was also a ministerial act, that was procedural or mechanical.

<u>ACTS COMMITTED BY RESPONDENTS</u>

Respondents admitted unnecessary delays, intentional failure to submit Petitioners' annual income tax forms for processing, and intentional destruction of Petitioners annual income tax forms. These were <u>ministerial acts</u>. (Emphasis added)

---

[2] See Regulations section 301.6404-2 for more information. (Instructions for Form 843 (Rev. December 2012))
[3] See Regulations section 301.6404-2 for more information. (Instructions for Form 843 (Rev. December 2012))

1   Petitioners' annual tax forms were filed in August 2010 at the specific direction of
2   an IRS representative. Petitioners filed corrected returns at the end of November 2010
3   to comply with the 1040x casualty loss. After additional unnecessary delays over the
4   following year, one or more Respondents admitted intentional destruction of Petitioners'
5   annual income tax forms, by shredding them, and required Petitioners to resubmit their
6   entire annual income tax forms and records. Then after additional unnecessary delays,
7   Respondents directed Petitioners to resubmit all of the annual income tax forms a
8   second time bearing original signatures.

9   Respondents intentionally misstated federal income tax law as it applied to the
10  specific facts of Petitioners' annual income tax forms, and after a delay of more than two
11  years, still have not processed Petitioners' annual income tax forms, which intentionally
12  prevents Petitioners from the findings necessary to timely file their annual income tax
13  forms for the last two years.

14  Internal Revenue Code 6402 Creates Ministerial Duty to Grant Credit or Refund
15  Which Is Enforceable by a Mandamus Suit When the Government Induces Reliance by
16  Taxpayer.

17  <u>NO OTHER ADEQUATE REMEDY IS AVAILABLE TO THE PETITIONERS</u>

18  Under the circumstances of this case, Petitioners have no other adequate
19  remedy available to them. The Tax Court has no jurisdiction to grant Petitioners relief.
20  The tax court has no jurisdiction to order or to deny a refund,[4] or to decide
21  equitable questions.[5] Thus, the tax court has no jurisdiction to decide which of several

---

[4] *United States ex rel. Girard Trust Co. v. Helvering,* 301 U.S. 540, 542, 57 S.Ct. 855, 81 L.Ed. 1272 (1937).
[5] *Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139 (1943).

claimants is entitled to a refund,[6] to decide who is entitled to the refund when someone other than the person named in the deficiency notice has paid the tax,[7] or to resolve disputes as to a right to a refund that may hinge upon some contingency beyond mere overpayment.[8] The taxpayer must resort to the district court or the court of claims for a resolution of such disputes or for an order granting a refund.[9] Tax Court has no jurisdiction to look behind IRS' statement.[10] Tax Court has no jurisdiction to review IRS' determination to proceed or not to proceed,[11] and the Tax Court has no jurisdiction to review request for innocent-spouse relief. This position had already been endorsed by the Ninth Circuit,[12] and would be again five days later by the Eighth Circuit.[13] Tax Court has no jurisdiction over section 6015 petitions "where no deficiency has been determined by the IRS"[14] and *Petalumas I*,[15] *II*,[16] and *III*,[17] with D.C. Circuit deciding the Tax Court has no jurisdiction when IRS had conceded and stipulated jurisdiction.

The Tax Court has no jurisdiction to re-determine an alleged deficiency unless the IRS first issues a notice of deficiency. *See, e.g., Laing*, 423 U.S. at 165 n. 4, 96 S.Ct. at 477 n. 4 ("A deficiency notice is of import primarily because it is a jurisdictional prerequisite to a taxpayer's suit in the Tax Court for redetermination of his tax liability");

---

[6] *Huntington National Bank*, 13 T.C. 760 (1949).
[7] *John A. Snively, Sr.*, 20 T.C. 136 (1953).
[8] *Robbins Tire and Rubber Co., Inc.*, 53 T.C. 275, 279 (1969); see *Empire Ordnance Corp. v. Harrington*, 102 U.S.App.D.C. 14, 249 F.2d 680, 682 (1957).
[9] *Hershal Weber, Petitioner v. Commissioner of Internal Revenue*, 138 T.C. No. 18.
[10] *Anonymous 1 and Anonymous 2*, Docket No. 12472-11W.
[11] *Raymond Cohen*, 139 T. C. 12, filed 10/9/12.
[12] *Commissioner v. Ewing*, 439 F.3d 1009 (9th Cir. Feb. 28, 2006), *revg.* 118 T.C. 494 (2002), *vacating* 122 T.C. 32 (2004).
[13] *Bartman v. Commissioner*, 446 F.3d 785 (8th Cir. May 2, 2006), *affg. in part, vacating in part* T.C. Memo. 2004-93; and *See, Billings v. Commissioner*, 127 T.C. 7 (2006).
[14] *Bartman, supra* 446 F.3d at 787- 788.
[15] *Petaluma FX Partners, LLC et al. v. Comm'r*, 131 T.C. 84 (2008) (Petaluma I).
[16] *Petaluma FX Partners, LLC et al. v. Comm'r*, 591 F.3d 649 (D.C. Cir. 2010) (Petaluma II).
[17] *Petaluma FX Partners, LLC et al. v. Comm'r*, 135 T.C. 581 (2010) (Petaluma III).

*Portillo v. Comm'r of Internal Revenue*, 932 F.2d 1128, 1132 (5th Cir.1991) ("the Tax Court only has jurisdiction when the Commissioner issues a valid deficiency notice and the taxpayer files a timely petition for redetermination"); *Robinson v. United States*, 920 F.2d 1157, 1160 (3d Cir.1990) (notice of deficiency is the taxpayer's "ticket to the Tax Court" and is "a jurisdictional prerequisite to a suit in that forum" (internal quotation omitted)). Because the IRS did not send Petitioners a notice of deficiency before Petitioners filed this petition for a writ of mandamus in this Court, the Tax Court lacked jurisdiction over their petition. The tax court is without jurisdiction to decide whether Ms. Su, the person who actually paid the tax, or Mr. Rowen, or someone else was entitled to the refund. Once it has been determined there was no deficiency and there had been an overpayment in a certain amount, it had no jurisdiction to consider or resolve any other issue. Thus, the tax court could not bar the district court from deciding the very issues that the tax court was without jurisdiction to determine. The district court has jurisdiction under 28 U.S.C. 1346(a)(1) and 28 U.S.C. § 1361. Petitioners have no other adequate remedy available to them other than this writ of mandamus.

### PETITIONERS' RIGHT TO THE PETITION FOR WRIT OF MANDAMUS

Mandamus relief is available to compel the Respondent officials of the United States to perform duties owed to Petitioners because, as shown above, (1) Petitioners' claims are clear and certain; (2) the Respondents' duties are "ministerial and so plainly prescribed as to be free from doubt"; and (3) no other adequate remedy is available.[18] Petitioners are entitled to the writ of mandamus as a clear and undisputed matter of law.

---

[18] *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986)

## REASON THIS PETITION FOR A WRIT OF MANDAMUS IS NECESSARY

The Internal Revenue Code established married tax payers can elect whether to file as married filing separately or married filing jointly;[19] In (b) (2) (A) it limits the election to within "3 years from the last date prescribed by law for filing the return for such taxable year . .". However, 26 USC 6013(B)(3)(A)(iii)" which states, in relevant parts, as follows: (3) When return deemed filed (iii) Where only one spouse filed a separate return prior to the making of the joint return, and the other spouse had gross income of the exemption amount or more for such taxable year—on the date of the filing of such joint return. (Emphasis added)

The intent of Section 6013(b)(2) has been addressed in a number of separate circuits.  While a married person is prohibited from filing as a single person, married persons are given the opportunity to file as married filing separately or as married filing jointly. And there is a time limit intended for the filing of a joint return after both spouses elected to file as married filing separately.

But in 26 USC 6013(b)(3)(A)(iii), where only one spouse filed as married filing separately and the other spouse did not file, even though the other spouse had an income clearly not exempt, the law defines the date of filing the joint return as the date of filing; not the date the married filing separate filing occurred, and is not limited by the 3 years explained in Section 6013(b)(2), but from the date of actual filing of the joint return. This intentional misstatement of law was in a letter from Respondent Ursula Dean, dated October 19, 2012. Where 26 USC 6013(b)(3)(A)(iii) applies where only one spouse filed as married filing separately and the other spouse did not file.

---

[19] 26 U.S.C. 6013.

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS                                                    PAGE 7 OF 18

If the intent of the wording was to prevent Mr. Rowen from the benefits of filing married filing jointly, after Ms. Su filed married filing separately, it would violate his constitutional rights to Due process, Equal Rights and Fundamental Fairness. But there appear to be a clear intent to prevent that from happening with the wording as explained above.

Respondents repeatedly have intentionally misstated the law to the Petitioners.

Ms. Su filed a timely annual tax return for 2001 as married filing separately, but Mr. Rowen did not file during that year. At direction of a Revenue Officer, Petitioners' annual tax forms were filed in August 2010. Petitioners discovered they would be able to substantiate a sizeable casualty loss, with records from the Bankruptcy Court and the titles from property records from the Recorder's office in support thereof. Petitioners filed their corrected federal income tax returns in November 2010 to comply with the 1040x casualty loss as married filing jointly. The result of the processing of the Petitioners' income tax returns and the casualty loss would prove Petitioners owed nothing to the IRS and would be entitled to carry the unused portion of the casualty loss forward for their next income tax returns.

Pursuant to 26 USC 6013(b)(3)(A)(iii), the Petitioners were entitled to apply the results of their corrected income tax returns and their casualty loss to Ms. Su's 2001 married filing separately along with the other income tax forms that were all filed at the same time.

The Respondents have repeatedly delayed submitting Petitioners' income tax returns for processing, shredded Petitioners' income tax returns, and have repeatedly misstated the law and facts as they apply to the Petitioners in this case.

Additionally, Respondents misstated the law and facts as it pertains to the claims filed as Petitioners' income tax returns. Respondents misstated "You filed your claims more than 3 years after you filed your tax return" in a letter dated December 21, 2011 from Respondent Rosalind C. Kochmanski, and in a letter dated August 30, 2012, from Respondent Ann Hagemeyer. Respondents knew that all of the claims and income tax returns were filed at the same time on the same identical day. Respondents relied on the following first sentence, as follows:

"3 years from the return due date of a timely filed, unextended return," when the second sentence is the one that applies to the Petitioners' income tax returns:

"3 years from the date we received a late return or timely filed, extended return."

The claims and corrected income tax returns were all filed at the same time, and pursuant to the clear reading of the Internal Revenue Code, well within the time period Petitioners are entitled to the relief they seek as a clear and undisputed matter of law. (The corrected/amended returns were submitted only 3-4 months in November 2010 after initial filing, and resubmitted to the IRS only a few months later. Upon firm discovery that the IRS shredded the returns bearing original signatures, they were resubmitted with original signatures about one year after the original returns, well within the time period in sentence two above: "three years from the date we receive a late return."

## ANTI INJUNCTION ACT DOES NOT APPLY

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."[20] *Id.* (omitting exceptions not relevant here). Congress drafted the Anti-Injunction Act "to

---
[20] 26 I.R.C. 7421(a).

permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to disputed sums be determined in a suit for refund."[21] A suit barred by the Anti-Injunction Act "may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise." *Id.*

Courts have created two exceptions to the Anti-Injunction Act. First, the Act does not apply when the government cannot prevail under any circumstances and the plaintiff has shown irreparable harm.[22] Second, the Act does not apply when Congress has not given the plaintiff a legal remedy to challenge the tax's validity.[23] Petitioners argue that the Act itself does not apply because the mandamus and injunctive relief they seek will not restrain the collection or assessment of any tax.

The anti-injunction act does not apply because the Petitioners' Petition for a Writ of Mandamus is not "for the purpose of restraining the assessment or collection of any tax." 26 I.R.C. 7421(a).

The Petition for writ of mandamus requests a mandate directed to Respondents to require them to comply with the Internal Revenue Code, to require Respondents to process all of Petitioners' income tax returns and their 1040X casualty loss claim, and for an injunction to prevent the Respondents from intentionally destroying federal income tax returns by shredding them before they have been processed, and to prevent the Respondents from repeatedly misstating the Internal Revenue Code to Petitioners.

Although the plain text of the Anti-Injunction Act deprives all courts of jurisdiction over any suit "for the purpose of restraining the assessment or collection of any tax." 26

---

[21] *Enochs v. Williams Packing & Navigation Co.* [62-2 USTC ¶9545], 370 U.S. 1, 6 (1962).
[22] *Roat v. Commissioner* [88-1 USTC ¶9364], 847 F.2d 1379, 1383 (9th Cir. 1988).
[23] *South Carolina v. Regan* [84-1 USTC ¶9241], 465 U.S. 367 (1984).

I.R.C. 7421(a), the Supreme Court has recognized an exception to this otherwise absolute language: "Only upon proof of the presence of two factors could the literal terms of § 7421(a) be avoided: first, irreparable injury, the essential prerequisite for injunctive relief in any case; and second, certainty of success on the merits."[24] The Petitioner' action is precisely the rare type of suit for which this exception was crafted.

In analyzing the "certainty of success" factor, the Court must determine whether "under the most liberal view of the law and the facts, the United States cannot establish its claim,"[25] In this case, the IRS cannot prevail on their claims, because Petitioners' federal income tax forms and casualty loss proves Petitioners are entitled to a refund.

As the courts previously noted:

Issuance of a writ of mandamus is carefully circumscribed and used "only in extraordinary situations," since it is a "drastic" remedy.[26] Petitioners seeking a writ of mandamus must satisfy the "burden of showing that [his] right to issuance of the writ is 'clear and indisputable.'"[27] The Third Circuit has consistently adhered to this stringent standard.[28]

---

[24] *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (citing *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 6-7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)); Accord *United States v. American Friends Serv. Comm.*, 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974); *Commissioner v. "Americans United" Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).
[25] *Williams Packing,* 370 U.S.at 7, 82 S.Ct. 1125; see also *International Lotto Fund v. Virginia State Lottery Dep't,* 20 F.3d 589, 592 n. 3 (4th Cir.1994) (recognizing that Anti-Injunction Act destroys jurisdiction unless it is "clear that the government 'could in no circumstances ultimately prevail on the merits' " (quoting *American Friends,* 419 U.S. at 10, 95 S.Ct. 13)).
[26] *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34 (1980) ( *per curiam*).
[27] *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384 (1953) ( *quoting United States v. Duell,* 172 U.S. 576, 582 (1899).
[28] *See, e.g., PAS v. Travelers Ins. Co.,* 7 F.3d 349, 357 (3d Cir. 1993) *(denying writ of mandamus because it was not clear and indisputable that state claims were not preempted by ERISA); Sunbelt Corp. v. Noble, Denton & Associates, Inc.,* 5 F.3d 28 (3d Cir. 1993) *(granting writ because it was clear and indisputable that district court did not have the legal authority to transfer a case to a district where personal jurisdiction was lacking); Travellers International AG v. Robinson,* 982 F.2d 96, 98 (3d Cir. 1992), *cert. denied,* 113 S.Ct. 1946 (1993) *(denying writ of mandamus because it was not clear and indisputable that petitioner was entitled to jury trial).*

Here, the Petitioners have a clear and indisputable right to have the Petition for Writ of Mandamus granted to mandate the Respondents comply with the Internal Revenue Code. Their lack of remedies are circumscribed by the Internal Revenue Code as discussed above. Accordingly, Petitioners are entitled to mandamus relief.

The courts recognize that the "extraordinary" remedy of mandamus cannot be used where an "ordinary" appeal would otherwise suffice.[29] Some courts of appeals have used this principle to deny mandamus where petitioners have failed first to seek permissive interlocutory review under 28 U.S.C. § 1292(b), or to explain why such relief would be inadequate.[30] But in this case an "ordinary" appeal would not suffice and interlocutory review is not available, and not adequate to provide the relief requested.

The Third and Ninth Circuits conclude that the failure to seek interlocutory review under § 1292(b) does not automatically preclude issuance of the writ of mandamus. In *Alexander v. Primerica Holdings, Inc.*,[31] and *In re School Asbestos Litigation*,[32] the Third Circuit held that there should not be any bright-line rule requiring petitioner to seek a § 1292(b) certification, or show good reason why it was not sought, before filing a mandamus petition. As the School Asbestos court explained:

> We reiterate our preference for an explanation in the petition for why interlocutory appeal is not an adequate alternative. Where interlocutory appeal seems a practical but untried avenue, we will ordinarily deny a petition for mandamus. We decline, however, to dismiss any of the petitions in this case out of hand for failure to address the availability of interlocutory appeal.[33]

---

[29] *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 8 n. 6, 103 S.Ct. 927, 933 n. 6, 74 L.Ed.2d 765 (1983).
[30] *See, e.g., DeMasi v. Weiss*, 669 F.2d 114, 118-19 (3d Cir.1982); *Rapp v. Van Dusen*, 350 F.2d 806, 813 (3d Cir.1965); *Evans Electrical Constr. Co. v. McManus*, 338 F.2d 952, 953 (8th Cir.1964).
[31] 10 F.3d 155, 163 (3d Cir.1993).
[32] 977 F.2d 764, 773-74 (3d Cir.1992).
[33] 977 F.2d at 774 (citations omitted).

The court stressed that a "rigid" approach to mandamus relief would be inconsistent with its purposes: "Some flexibility is required if the extraordinary writ is to remain available in extraordinary situations. 'The writ is a safety valve (one of several safety valves, in fact) in the final-judgment rule, and its proper use cannot be wholly reduced to formula.' "[34] Similarly, the Ninth Circuit rejected the application of a strict requirement that petitioner first attempt to obtain § 1292(b) certification, where possible, before seeking mandamus.[35] The court pointed out that such a requirement would be needlessly inflexible and inconsistent with prior practice. Although previous Ninth Circuit decisions might have appeared to require that petitioner first try to obtain § 1292(b) certification, the court explained that these rulings were simply "based on prudential considerations." Id.

In circumstances like those in the Petitioners' case, the writ of mandamus lies to require the Respondents to perform a duty owed to the Petitioners the same as it would lie to require a district court to proceed with and determine actions pending before it.[36]

Petitioners invoked the Administrative Procedure Act, 5 U.S.C. §§ 704-06; the All Writs Act, 28 U.S.C. § 1651; the Mandamus Act, 28 U.S.C. § 1361.

It has long been recognized that courts in the Ninth Circuit have jurisdiction to grant prospective relief requiring governmental officials to obey the law according to Ex parte Young.[37] Today, it is the rule of the Ninth Circuit, under *Presbyterian Church*

---

[34] Id. at 773 (citing *Maloney v. Plunkett*, 854 F.2d 152, 155 (7th Cir.1988)).
[35] See *Executive Software North America, Inc. v. United States Dist. Ct.*, 24 F.3d 1545, 1549-50 (9th Cir.1994).
[36] *McClellan v. Carland*, 217 U.S. 268, 280, 30 S.Ct. 501, 54 L.Ed. 762; *In re President and Fellows of Harvard College*, 1 Cir., 149 F.2d 69, 73. See also *LaBuy v. Howes Leather Co., Inc.*, 352 U.S. 249, 260, 77 S.Ct. 309, 1 L.Ed.2d 290.
[37] 209 U.S. 123 (1908); *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010).

(U.S.A.) v. United States,[38] that the APA effectively adopted *Ex parte Young* as the doctrinal basis for a claim seeking prospective relief and as a federal sovereign immunity waiver.[39]

The Ninth Circuit's decision in *Veterans for Common Sense v. Shinseki*[40] resolved any tension between *Gallo Cattle* and *Presbyterian Church*,[41] holding that as to "claims for 'relief other than money damages,' Section 702 waives sovereign immunity regardless of whether the claims arise from 'agency action' as defined by the APA."[42]

The *Shinseki* court stated:

> it is Presbyterian Church and not Gallo Cattle that controls where . . . a plaintiff's challenge is . . . not dependent on the APA for a cause of action.
> The first and second sentences of § 702 play quite different roles, each one significant. The first sentence entitles aggrieved individuals to "judicial review of federal agency action." The second sentence, added to the statute decades later, waived sovereign immunity for "[a]n action in a court of the United States seeking relief other than money damages . . . ." One such action, of course, is a suit for "judicial review of federal agency action" of the sort authorized by the first sentence. But other actions exist too. Injunctions may be sought, for example, to enforce the Constitution itself, courts need no statutory authorization to undertake constitutional review. . . .
> *Gallo Cattle* considered a challenge to an agency order denying the plaintiffs . . . interim relief to which the plaintiffs believed themselves entitled by statute and the agency's regulations. The plaintiffs sought "judicial review of agency action" not because it was unconstitutional, but because it violated the rules governing the agency. . . .[43]

---

[38] 870 F.2d 518, 526 (9th Cir. 1989).
[39] *See Peabody Western*, 610 F.3d at 1086 ("[S]ince 1976 federal courts have looked to § 702 of the [APA] to serve the purposes of the Ex parte Young fiction in suits against federal officers.").
[40] No. 08-16728, 2011 WL 1770944 (9th Cir. May 10, 2011).
[41] In *Gros Ventre Tribe v. U.S.*, 469 F.3d 801 (9th Cir. 2006), the Ninth Circuit previously observed that there was "no way to distinguish The Presbyterian Church from Gallo Cattle." Id. at 809.
[42] *Shinseki*, 2011 WL 1770944, at *16.
[43] *Id.* at 15 (emphasis added).

The *Shinseki* court went on to state that where a plaintiff challenges an agency action "which does not depend on the cause of action found in the first sentence of § 702," Section 704's "limitation of that first sentence is thus inapplicable, and the district court's reliance on Gallo Cattle [will be] incorrect."[44]

Instead, where plaintiffs bring "'[a]n action in a court of the United States seeking relief other than money damages'" that arises under other federal law, "sovereign immunity has been waived by § 702's second sentence."[45]

Under *Shinseki*, which is binding law in this jurisdiction, Section 702 waives sovereign immunity for plaintiffs seeking relief other than money damages against a federal agency when (1) a plaintiff seeks review of a "final agency action" under Section 704, or (2) a plaintiff states a claim that would otherwise fall within the purview of federal jurisdiction.[46]

Here, both avenues serve as waivers of the United States' sovereign immunity; and both provide Petitioners with actionable claims under federal law.[47]

1. The United States' Sovereign Immunity Is Waived Under The First Sentence of The APA's Section 702.

The APA grants a cause of action and right of review to any "person suffering legal wrong because of" a "final agency action for which there is no other adequate

---

[44] *Id.* at 16. In other words, under Shinseki "final agency action" is not necessary for jurisdiction, but, rather, is "a necessary element of a cause of action under the APA." *CareToLive v. Von Eschenbach*, 525 F.Supp.2d 938, 948 (S.D. Ohio 2007).
[45] *Sidhu v. Chertoff*, No. 07-1188, 2008 WL 540685, at *5 (E.D. Cal. Feb. 25, 2008) *(quoting Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 n. 6 (9th Cir. 1997)).
[46] *See e.g.,* 28 U.S.C. §§ 1331, 1333, 1361-62, 2201-02; 29 U.S.C. § 1132(e).
[47] Respondents might assert that "[i]f a plaintiff fails to identify a final agency action challengeable under the APA, the action should be dismissed for lack of subject matter jurisdiction." ECF No. 51 at 12. In light of *Shinseki*, this cannot be the case.

remedy in a court . . . ." Where an agency is under an affirmative duty to act, "failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review."

"The Ninth Circuit has confirmed that inaction involves a non-discretionary act" where "'at some level, the government has a general non-discretionary duty'" to take an affirmative action. [48] "It is [now] undisputed that claims of inaction by an agency are reviewable under the APA . . . ."[49] Federal Respondents' action – and inaction –, was a "final agency action" under the APA.[50]

This Court can see the waiver of immunity as explained above, and Petitioners are entitled to the Petition for Writ of Mandamus.

In construing a statute, courts generally seek the plain and literal meaning of its language.[51] For that purpose, courts generally assume that Congress uses common words in their popular meaning.[52]

In deciding whether the regulation comports with the statute's plain language, the courts look to the ordinary usage or settled meanings of the words used in the statute by Congress.[53] There is a strong presumption that Congress expresses its intention through the language it chooses.[54]

---

[48] *Sierra Club v. Thomas,* 828 F.2d 783, 793 (D.C. Cir. 1987).
[49] *Florida Marine Contractors v. Williams,* No. 03-0229, 2004 WL 964216, at *3 (M.D. Fla. Apr. 22, 2004); *see also Hall v. Norton,* 266 F.3d 696, 975 n. 5 (9th Cir. 2005) (an agency's decision not to consult federal law is itself a "final agency action"); *Natural Resources Defense Council v. Patterson,* 333 F.Supp.2d 906, 916 n.6 (E.D. Cal. 2004) (finding "final agency action" where plaintiffs "point[ed] to specific, albeit repeated, instances in which the government decided not to act, i.e. not to release sufficient water to keep the fish in good condition").
[50] *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997).
[51] *See United States v. Locke,* 471 U.S. 84, 93, 95-96 (1985); *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 543 (1940).
[52] *See Commissioner v. Groetzinger,* 480 U.S. 23, 28 (1987), affg. 771 F.2d 269 (7th Cir. 1985).
[53] *See Lynch v. Alworth-Stephens Co.,* 267 U.S. 364, 370 (1925).
[54] *See INS v. Cardoza-Fonseca,* 480 U.S. 421, 432 n.12 (1987).

A regulation may not contradict the unambiguous language of a statute.[55] Where the statute's language is plain, the language is where the interpretive task should end, and the sole function of the courts is to enforce such language according to its terms.[56]

## CONCLUSION

In conclusion, the Petitioners would urge the Court to grant their Petition for Writ of Mandamus for the above and foregoing reasons.

Respectfully submitted this 9 day of November, 2012.

TERESA SU, Petitioner                ROBERT ROWEN, Petitioner

_____              _____
Teresa Su, pro se                    Robert Rowen, pro se

---

[55] *See Citizen's Natl. Bank v. United States*, 417 F.2d 675 (5th Cir. 1969); *Hefti v. Commissioner*, 97 T.C. 180, 189 (1991), affd. 983 F.2d 868 (8th Cir. 1993).
[56] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *United States v. Merriam*, 263 U.S. 179, 187-188 (1923)(stating that tax statutes are not to be extended by implication beyond the clear import of the language used).

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the appropriate parties by serving a copy thereof by <u>mail</u>/hand/fax to the parties at the addresses below:   *certified*
7011 0470 0001 6393 5225

Doug Shulman, Esquire, and all other Respondents
Commissioner of Internal Revenue
10th St & Pennsylvania Ave, NW
Washington, DC 20004

on this 9th day of November, 2012.

Signed: _____

ROBERT ROWEN'S AND TERESA SU'S
PETITION FOR A WRIT OF MANDAMUS                                   PAGE 18 OF 18